May it please the court, Kelly Barnes representing Mitchell Chandler. In speaking with counsel for the United States this morning, she seemed to think it would be best if we just proceeded first with the homicide case, if that's acceptable to the court, which would be 30178, I believe, and address the plea change issue first. It seems consistent with the matters that the court has raised. It would be Mitchell's position that he's demonstrated a fair and just reason for withdrawal of his plea in this particular matter, given his circumstances, his age, and those sorts of things. It was done fairly quickly after he entered his initial plea of guilty with the federal defenders representing him at that particular time. The position of the United States seems to be that it's consistent with the other matters today and somewhat buyers remorse. But if the court thinks back and looks at some of the initial plea colloquy that took place with the Federal Defender's Office, Mitchell is torn as he's going through the colloquy with Judge Sievel. And the pleas with Judge Sievel tend to be quite long, and some of my female lawyer friends say you need to wear sensible shoes. And this one went on for a long time. But the court can see, as Mitchell says, did you kill Paul Mourning? And he says yes, and he describes the number of times that he stabbed. And then when we get to the issue of malice aforethought, Mitchell starts balking during the plea colloquy. First it's, is he comfortable with his attorney? And then when the judge talks about malice aforethought, there's the answer no, but yes, did you kill Paul Mourning or stab Paul Mourning? Yes, I did. But then it was reckless. And then he goes into, well, what did you do? And he talks about the bulldogging or the boot-dogging. And it seems plain during this plea colloquy that Mitchell was torn and not committed to what was going on, and nor did he necessarily believe that what he did met the elements of the statute. And I think that's part of the frustration of the guess-journal. It seems to me that there's a difference between a defendant's factual admissions and a defendant's, I don't know what the right word is, his misunderstanding of the law. And if a district court is satisfied that a person understands the, an understanding and has been well advised of what the legal requirements are, the fact, I guess what I'm struggling with is it seems like he is disagreeing with the definition of the crime. He understands what the definition of the crime is, but he thinks it's stupid. But he doesn't deny having done the acts that fit the definition. He just doesn't like the definition. And I guess that's the impression that I had from it. And if that is what is going on, is that sufficient to permit the withdrawal of the plea? Your Honor, I think that, in some respects, is what is going on. The term malice of forethought, Mitchell was quite a passive individual, and it's shocking that this thing happened. But the term malice of forethought was something that meant I went there that day to stab Paul Mourning, and I didn't. He was convicted of second-degree murder, malice of forethought, not deliberation. Correct. He could have been convicted of deliberate homicide because he went back and got the knife and came back and killed a man, right? So his plea was obviating a conviction of first-degree murder. Yes, Your Honor. There were significant risks, no doubt, of Mitchell going to trial. And you can tell from the record that the federal defenders were extremely concerned, if he went to trial, that there was an aspect of premeditation there, given the separation of the first time. So they gave him good advice. Pardon me, Your Honor. They gave him good advice, and he got a good deal. Your Honor, you put me on the spot in my role as an advocate and what I think is best for your question, I would have to agree with, is for what's best for my client, that that advice was sound advice. And I think the sentencing from Judge Siebel even demonstrated that more, that if there was a way under the guidelines at that point in time that Judge Siebel could give Mitchell more time, he certainly would have. And had he gone to trial, we'd have seen a lot different result. So I don't disagree with that. It makes it somewhat difficult for me as the advocate, Your Honor, to get back to the part of the question. But I think it goes to the knowingly part of the plea. Is it knowingly made if the defendant, while he's been advised numerous times that malice of forethought includes an element of recklessness, yet he doesn't recognize that recklessness, that it's truly a knowing plea at that point in time. And I would submit that despite the lengthy colloquy and the totality of the circumstances here with Mitchell's age and all of the factors that were going on, that we haven't met that particular threshold. And his difficulty in coming to the plea and the difficulty Judge Siebel experienced with the colloquy, I just think, continues to express that. And I would submit that it's a fair and just reason at that point in time to withdraw the plea. If the Court has any questions, there were a couple of other issues in that particular case. One was whether the United States had complied with the plea agreement and that there never was a recommendation orally made by the U.S. attorney in that particular case for the acceptance of responsibility reduction. Let me ask you something on that, if I may. Yes. I certainly appreciate that we've explicitly said, I think Mondragon is probably the leading case on it, that the government has an obligation to step up to the plate according to the literal commitment in the plea agreement. Here's my question. I'm not sure I'm going to say this very clearly, but I'd like to get your input on it. Here, the government committed to recommending an adjustment for acceptance of responsibility and to move for the one-fifth. After that, everything changed. That is, the District Court found that Chandler escaped and that that warranted an adjustment for obstruction. Under the law in general and the guidelines, an obstruction pretty much eliminates the possibility of an adjustment for acceptance of responsibility except under extraordinary circumstances. So, because everything changed, the government really couldn't stand up. I mean, it would have had no effect at all to stand up and say, look, pre-escape, we recommend an adjustment for acceptance of responsibility. But in making the response to the District Court that the government did, why wasn't the government providing the District Court essentially with new information or talking about factual and legal issues that had developed since the escape, which would come within the escape clause of Mondragon? I think, Your Honor, that the hope I'm answering this and the court steer me, if I'm not, is I think we're stuck with the contract analysis to answer your question, and that is the government bargained and Mitchell bargained for the reduction for acceptance of responsibility of three points. The government also reserved the right to make any sentencing comments that it could. So within the terms of the agreement, it was totally within its rights to advocate that three-point or, excuse me, the seven-point adjustment, two-point adjustment for obstruction of justice, I'm sorry, and it was within the terms of the plea agreement to do so. It seems that if Mitchell's held to the terms of the plea agreement, which Judge Siebel had him do despite the shenanigans in the van on the transport, that the United States needs to be held to that, too. What do you think? I mean, this is a very sort of puzzling conundrum, because if the government had stood up the way this thing went down, the judge had already said, look, I'm giving the adjustment for the enhancement for obstruction, and I understand that the government has accepted, you know, acceptance of responsibility, but I don't agree. So then do you think that the government should have stood up to that point and said, what, hey, judge, we have an obligation under the plea agreement to make the recommendation for acceptance of responsibility, but of course, as you've just found, everything has changed. And so now we're in a different world? Is that what it should have done? I think so, Your Honor, and it seems that while Mondragon isn't greatly on point, it seems the court was kind of taking the approach that Judge Siebel did here, was I don't care what the government says here. I'm not going to listen to that. I've already made up my mind. I'm not going to give you that three points for acceptance of responsibility. So it would be my position that that's what Mitchell bargained for, and that's what he ought to get, and maybe it's a hollow act. And if the court feels that it's a hollow act and that that's acceptable here, then it seems like he hasn't got exactly what he bargained for. And you don't like to have somebody do something that you don't think is going to have any impact, and the judge has said that. On the other hand, the defendant didn't get very much of the agreement, and the one thing he did bargain for he didn't seem to get. What he bargained for was a three-point downward adjustment for a plea of guilty. He pleaded guilty. Yes, Your Honor. So he performed everything that his plea agreement required. Then later he attempted to escape, and he gets a two-point upward adjustment. Is your argument that he should get a three-point? Or is your argument that the government breached its obligation by not arguing or not recommending three points down before they took a two points up? I think under the plea agreement, Your Honor, that the government can advocate the two-point increase for an obstruction of justice and still get up and say, but also, Your Honor, we bargained and contracted with Mr. Chandler for a recommendation for a three-points reduction. We make that position here. If we were to reverse for resentencing, should it go to Judge Stiebel? Is there any reason why it shouldn't? I would say no, Your Honor. I think we have case law saying that in this sort of situation harmless error doesn't apply, and it's supposed to go to another judge. Mondragon does indicate that, Your Honor. Yeah. Is there some exception that would mean that it couldn't go back to another judge, or you're just saying that you're not making any independent argument about him? I've been in front of Judge Stiebel for a long time, Your Honor, and I'm comfortable with his ability to look at things. You know, Judge Shandstrom is there in Billings and can handle a matter quite easily. The precedent does seem to indicate that someone else should hear it. You know, I've had cases reversed before and gone back before the judges and been very comfortable with how things have been done, and I'd be comfortable here. I guess to revisit Judge Reimer's comment is, you know, there were two things that happened here that I thought met the exceptional circumstances situation for the acceptance of responsibility, and that was Mitchell driving the decedent to the Crow Hospital and then going to the decedent's home after that. Do you interpret the government's commitment in the plea agreement as reaching to an argument that there are exceptional circumstances? I don't think I could ask the government to do that under the terms of that plea agreement. I wouldn't think so. So if that's true, then we come back to my original question. I mean, this is just a real mess. Yes. Yes, Your Honor, it is. And I just don't know how to answer that except to advocate for the client. The second case that was pending before the court was the escape charge that was later filed by the United States. We filed a motion to dismiss that matter on double jeopardy grounds. When I first looked at it, it appeared Jernigan and Witte completely resolved that particular issue, and there was no claim. And then the more I looked at it, and we looked and visited in the office, we became not so sure that that was the case, and mostly because the statutory maximum for the escape in this case is five years. And when Judge Sievel took away Mitchell's acceptance of responsibility of three points, added two for the obstruction of justice, we suddenly had an increase in his sentence of seven years. And then we did that in a rather contested manner at the sentencing with witness's call, cross-examination, argument, and that sort of thing. So why isn't the Witte case still binding? Why is the second prosecution precluded? I didn't hear the last part of that. Why would a second prosecution be precluded in view of the Witte case? I would say two reasons, Your Honor. Number one is that the mandatory protections under the guidelines of Witte in 1995 are no longer in place, and so they're advisory, and that may tip how the court would view it. And secondly, in Witte, it does not appear from the record, at least my reading of it, that when you have a contested situation where the whole point of the hearing is to determine whether someone escaped, and then you increase their sentence beyond the statutory maximum for that, that Witte and Jernigan may not apply. But conceptually, it seems to me that what they were holding is that an increase in your sentence for crime number one, because of the facts that underlie another crime, is not punishment for that second crime at all. Conceptually, it's still punishment for the first crime, except it turns out we now know you're a worse person or a more criminal person or something. But conceptually, why doesn't that still apply here? I think conceptually it still does, Your Honor. I think what happens is we run into whether the double jeopardy clause means anything in regard to multiple punishments for the same behavior when it's taken into a context here of a contested hearing, where Witte, it looks like, at least from my reading of that case, that the court looked at the pre-sentence report. The drugs from the cocaine were added in with the marijuana, and the guy's sentence got enhanced, and that was the extent of the fact-finding. And then there's some language in Witte, and as we know, they only address the issues as they get them. But there's some language in them midway through where it talks about it doesn't make any difference whether the increase occurred in the first offense here or the second offense here because the penalties were either, I believe, 10 to life or 5 to 40, and the increase was within both of those particular offenses, which made me think that if we're faced with a situation where the increase is outside the statutory maximum for the  answer to wait and see if you're convicted of the second offense and then make that as an argument at sentencing, that, in other words, that it doesn't necessarily bar the prosecution at all, but may have an effect on the sentencing if there's a conviction on the second crime, which, of course, also is not assured. That was certainly an option that I had, Your Honor, and there is authority to go both ways. It seemed at the time that the better approach was instead to have Mitchell going through a second trial and a second sentencing, that you've kind of blown up what double jeopardy is all about if you've gone through that sort of process. Maybe if you're solely rested on double punishment rather than the conviction and retrial sort of thing, that that might have been the better approach and might be still something that I guess we'd have to look at. It was, I thought, a judgment call that I had to make, and it seemed like the best protection of his rights was to make that motion now and bring the issue now. Would you like to save the rest of your time? Well, I always find, Your Honor, that usually the court's heard enough and doesn't really want any more, so I'll just use the last 30 seconds and be seated. Thank you, Judge. We did raise the argument in the double jeopardy issue of collateral estoppel, but I will say that after raising that argument and in light of the decisions in some of the alien cases, I'm not sure it has any impact anymore. And so that was kind of the only comment we had there. Thank you very much. Thank you. Well, Your Honors, this must be your day for withdrawal of guilty plea cases. Yes, but I'm going to move you to another issue, and I'd like to talk about the government's not pursuing the acceptance of responsibility. Mondragon and some of the cases that follow it suggest two things. One is that the government simply has to live up to its contract as a matter of protecting the integrity of the process, and the sort of corollary to that is that there's no harmless error analysis that applies there. Why isn't that the beginning and the end of it? You had a written agreement in which you said, we will make this recommendation in court, and you didn't. And had you done so, you were not obliged to make the argument that it was an exceptional circumstance where this should apply in spite of the instruction, but it would have permitted defense counsel to make that argument. With what success, we don't know, but he did try afterwards to save the person's life, and there were other mitigating things that he could have argued. So why doesn't Mondragon just say reverse on the sentencing piece? Well, and I think that your reading of Mondragon is absolutely correct. That was a case that was handled by one of my colleagues in Montana, and it specifically says it's of no consequence that the district court judge did not take that as a comment on sentencing when it was made, and that we're strictly to comply with our obligations under the plea agreement. If you look at the way the sentencing went, and this is the way the sentencing goes with Judge Siebel every single time, he'll go through objections, and then he'll set the guideline calculation. And as he notes in the excerpts of record and in both of our briefs, we get to the point where he is setting the advisory guideline calculation, and he does not, pursuant to the pre-sentence report, give the two points, and then doesn't ask for me to stand up and recommend the third point. It's at that point, when we get to the base level and the guideline range, that Mr. Barnes stood up and said, you know, I have some concern that the United States has not made the recommendation. And the court replies, well, I think what the government is bound to do is move for the one point. However, you can only get the one point if you get the first two points. And that's pretty accurate. We don't usually stand up and recommend the two points. I don't think I've ever done that in a criminal sentencing. The court just grants it, and then I stand up and recommend the third point. And the court went on to say the probation law ---- Kagan. But you had an opportunity at some point to speak after, after the judge set the guideline calculation. Well, even so, why couldn't you have said, I appreciate, Your Honor, that you've already seemed to have made up your mind on this point, but I'm obliged by this written agreement to make this recommendation to you. And I am now making this recommendation to you. And, you know, Mr. Barnes may wish to make some additional comments as to why that might still apply. Why couldn't you have said that? And he might have still said, no, I really mean it. I really don't want to do it. But your obligation would have been fulfilled. Because Mondragon, it seems to me, not to be looking at what the judge is doing at all, but to be a way of enforcing the government's own contractual obligation. And if you look at it that way, it seems like a pretty straightforward problem. But the problem with that is that the very next thing, as the judge and Mr. Barnes were engaged in this colloquy, and I'm just kind of sitting there, the court said, it's an exercise in futility. It's a recommendation in the plea agreement that I'm not bound to follow. He said, even though I accept the plea agreement, I don't follow that. But I have taken that to be a recommendation. Except we have another case in which, now the name of it is escaping me, in which the government made the recommendation in writing, but then did not follow it up with an oral recommendation. And we again said the government was obliged to make the oral recommendation, too. I'm not familiar with that case that talks about the oral recommendation. I guess the reason that I didn't stand up is because the judge specifically said. I believe that was Camarillo Tello is the name of that case. It's 236F3rd. I don't have the page number. And I'll definitely look at that. But that was a case in which the written recommendation was made, but then the oral comments went a different direction. And we said, you still got to do it. Right. And here, the oral comments didn't go a different direction. I didn't even have a chance to speak, because after the court said, I have taken that to be the recommendation, it's already on the record that the court has agreed I've made the recommendation. And so at that point, I didn't stand up and say, and yes, I do make that recommendation, because the court indicated clearly that he's taken that to be the recommendation and he doesn't agree with it. And that's on Excerpts of Record 213. If you look at that, the judge says, you know, basically, I agree you've made that recommendation, you know, without saying that specifically. And so at that point, for me to stand up when he's already said, I agree the government has made that recommendation seemed to me to be futile. But if you look at Excerpts of Record 213, in the second exchange that Mr. Kagan No. I know that's what happened. I just am concerned that our cases require the government to do more. Well, and I'm concerned about that as well, Your Honor, in the sense that Mondragon talks about that there is no harmless error. But in this situation, it was addressed by the court. The court said, I take this to be your recommendation. There wasn't — it wasn't like in Mondragon where the attorney stood up and made comments that were clear to the court, were clarifying the criminal history, which the court said, yeah, I'm familiar with the criminal history. You basically don't have to tell me. But once you foreclose — I'm sorry. Go ahead, Judge Roberts. Just a quick clarification question. Is your position that given the way this went down, there was no error, so you're not in the harmless error? Absolutely, Your Honor. Because the district court said, look, I get it. You've made the recommendation. I don't agree with it. I agree with the probation office's recommendation. Exactly. So you don't get into Mondragon and harmless error because the court said, I've taken this as the government's recommendation. Excuse me. My question is, it is — there was never an opportunity for the defense to make the argument that this is the exceptional case in which both the obstruction should take — the obstruction adjustment should be made and the acceptance adjustment should be made. I believe he did that both in a sentencing memorandum and also actually at court. Was he able to do that orally? He did that during the sentencing at — because I remember he talked about how he had driven him to the hospital and then gone to his parents and some of those kinds of things. And then it was the case where he should get both the deduction for obstruction for the attempted escape but also get acceptance of responsibility. And that was after we had the witness about the escape, because he claimed it wasn't an escape attempt. He claimed it was a suicide attempt. Correct. So we put the witness on, and then I believe he gave some testimony from the defendant's family. There was some testimony from various people related to the victim. And I know that the sentencing memorandum that was filed, there was also some discussion about that, and that was again raised on appeal, that this was a case in which there should be both of those. And I'm not finding it in the excerpts, but I know that it was raised because the court talked about it, because he asked me to talk about it briefly. And under the plea agreement, we were allowed to do that. And I said that — here it is. Excerpts of Record 214. The court said, I have ruled that he gets an obstruction of justice enhancement. And under Application Note 4 to 3E1.1, the defendant has then not accepted responsibility. And he says, as I have previously ruled, there are no extraordinary circumstances that would warrant the awarding of those two points. Was that argued, though? It was — I know the judge said it. That's what I was — Okay. On page 210 and 211, it actually was. Okay. On 210 and 211, the court asked Mr. Barnes, do you want to talk any more about acceptance of responsibility, because he had filed a sentencing memorandum. And Mr. Barnes said, no, I think it's fully developed in the record. The court says, I've read your sentencing memo and your supplemental sentencing memorandum. Government, what is your argument? And I just said that it's clear it's a decision for the court to make. In the vast majority of cases, you can't get them both. And the court says, I think the law is there has to be an extraordinary circumstances. I find nothing extraordinary here to give that. And then goes on to talk about how also the attempted withdrawal of the guilty plea is an indication and evidence of no acceptance of responsibility. So that's in 210 and 211. So the defendant did have an opportunity to argue that and does raise that again here on appeal, that he believes the fact that he drove Paul to the hospital and then went and talked to his parents should give him the credit for extraordinary acceptance. But I think the record is also clear that the reason he ended up driving this young man to the hospital was because the first car that they put the victim in did not start. Mitchell's car or van was actually running. He had pulled up to the party, had gotten out with the knife. The van was still running. And the altercation took place almost immediately. And so basically then the group of kids who were carrying Paul put him in the vehicle and everybody got in and they drove from there. And so I think the court didn't feel that that was extraordinary in any fashion, but it was kind of more of a circumstantial kind of thing. Any other questions about the plea agreement issue? Okay. The issue about the second prosecution is intriguing to me because I think that the Witte case and the Jernigan case are absolutely on point with this case. And I think the mistake that is being made by Mr. Chandler's counsel is looking at the maximum possible penalty. He talked about that several times, that the maximum possible penalty for escape is five years and that Mr. Chandler got an additional seven years because of his obstruction and losing acceptance. But Witte and Jernigan both make clear that the punishment that falls within the range is for the first case, not for the second case. So it doesn't matter what the possible penalty is for escape, the five years. What matters is, did the extra time that he got for that conduct fall within the maximum for the first case, which in a second-degree murder case is life in prison, and he got 210 months. And so I don't think we're missing anything in there. I think that we're looking at the wrong potential maximum, according to both Witte and Jernigan. And his argument then that with the guidelines being advisory now, there is a concern that the court would not exercise its discretion or was not bound by the guidelines. But that was actually a beginning argument in Witte, was that now that we have guidelines, how is this going to work in terms of discretion? And they said, well, that just really wouldn't matter. And I can't see that it makes any difference here now that the guidelines are advisory as well. The court still has to impose a reasonable sentence and punish Mr. Chandler for the attempted escape with his criminal record in mind and not in any other fashion. And certainly his remedy, if he feels that the sentence is unreasonable, is to appeal to this court and cite why he believes it isn't reasonable. So I don't think that there is anything about the subject. And there's no guarantee he'll be convicted. None whatsoever. Presumably he can re-argue that he was despondent and just trying to end his life and that if the jury has a doubt, he won't be convicted at all. Exactly. And that's why we first argued that we didn't believe it was right for review, because he's not been convicted, much less sentenced, nor is any sentence running concurrently or consecutively. So at this point, we have no idea. He's been sitting waiting for trial, basically, while this appeal is pending, and a jury could believe him and say, beyond a reasonable doubt, I don't think the government has proven he was doing anything but trying to kill himself. And then we have no issue at all in terms of double jeopardy or double punishments. And so that's why I think at this point we just really felt like it wasn't right for review unless until he's convicted or pleads guilty, and then we go from there. The other couple of issues, I mean, I think obviously the biggest issue is the motion to withdraw, because, you know, if he's allowed to withdraw his guilty plea, then everything else is basically moot except for the new escape charge. And I think in this case it was very clear that what Mitchell Chandler didn't like were the words malice of forethought. And when you look at what it means in this context of a reckless disregard for human life, it absolutely fits. And malice of forethought is not the best equivalent to those words. And he couldn't get around the fact that he didn't like the words, but certainly admitted that his conduct was reckless. He engaged in a mutual fight with Paul Mourning. He lost that fight. He left. He went home, took his wife home, came back with a friend, armed himself with a knife and went right back to the party and engaged with Mr. Mourning again. And that's what made his conduct in reckless disregard for human life. And I think he just kept getting caught up in the idea that somehow he had premeditated this. Somehow he had planned to go back and kill Paul Mourning, and that absolutely wasn't the requirement under the statute. Just because he disagrees with the way that the law is worded doesn't mean that he didn't enter a knowing guilty plea. And we believe that's certainly the beginning of where the Court needs to start in this case. There are several other sections that have been raised, the acceptance of responsibility and then the insufficiency of evidence for the obstructing, claiming it was a suicide attempt. But I'll rest on my briefs on those unless the Court has any other questions on either of the two cases. No further questions? All right. Thank you. Thank you. Thank you. Thank you, Mr. Barnes. Thank you both for your helpful argument. And the matter just argued to be submitted. And we'll move to your argument in United States v. Morales. Mr. Bredin. Mr. Bredin.
judges: Rymer, Graber, Bea